**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARK HALOOSSIM,  )<br>          )<br>          Plaintiff,  )<br>          )<br>     v.  )<br>          )<br>HYATT CORPORATION, S. FRANKFORD  )<br>& SONS, INC. and TEN UNKNOWN  )<br>ENTITIES,  )<br>          )<br>          Defendants.  )<br>_____ | 3:12-cv-258-RCJ-WGC<br><br>**ORDER** |

Currently before the Court are Defendant S. Frankford & Sons, Inc.'s Motion for Summary Judgment on Plaintiff's Claims for Loss of Income (#63) and Defendant Hyatt Corporation's Motion to Join in Defendant S. Frankford & Sons, Inc.'s Motion for Summary Judgment on Plaintiff's Claims for Loss of Income (#69).

**BACKGROUND**

**I.    Complaint**

In January 2012, Plaintiff Mark Haloossim filed his first amended complaint for damages in federal court based on diversity jurisdiction against Defendants Hyatt Corporation ("Hyatt") and S. Frankford & Sons, Inc. ("Frankford") (collectively "Defendants"). (First Am. Compl. (#8) at 1-2). The complaint alleged the following. (*Id.* at 3). On or about May 25, 2010, the Hyatt purchased four #845WM-FGA 7 ½' x 8 rib Wooden Market Umbrellas-Acrylic-Wood Center Pole-Pulley Lift-No Tilt-Forest Green from Frankford for use on the Sierra Vista Deck of the Sierra Café located at the Hyatt Regency Lake Tahoe Resort, Spa, and Casino in Incline Village, Nevada. (*Id.* at 2-3). The Hyatt invited members of the general public to eat outside on the Sierra Vista Deck. (*Id.* at 3). On or about July 4, 2010, Plaintiff was legally and lawfully

having brunch with his family on the Sierra Vista Deck at the Sierra Café when one of the umbrellas used on the deck broke and struck Plaintiff on the head causing personal injuries. (*Id.*). Defendants knew, or in the exercise of due care, should have known, that injury to Plaintiff could have and would have resulted from the unsafe use and/or dangerous condition of the umbrellas used on the deck. (*Id.* at 3-4).

The complaint alleged two causes of action. (*Id.* at 4-5). In the first cause of action, Plaintiff alleged negligence against all Defendants. (*Id.* at 4). Plaintiff alleged that as a direct and proximate result of Defendants, he was hurt and "injured in his health, strength and activity, sustaining injury to his nervous system and person, all of which . . . caused and will continue to cause . . . great mental, physical and nervous pain and suffering." (*Id.*). As a result of Defendants' conduct, Plaintiff had to employ physicians and surgeons to examine, treat, and care for him. (*Id.*). Plaintiff incurred medical and incidental expenses in the sum of $34,390.77 and additional expenses in the amount unknown at this time. (*Id.*). Plaintiff "was prevented from attending to his usual occupation and sustained a loss of earnings in the sum of $150,000.00." (*Id.* at 5).

In the second cause of action, Plaintiff alleged defect in design-products liability against Frankford. (*Id.*). Plaintiff alleged that Frankford had induced Hyatt to purchase umbrellas that Frankford had manufactured, sold, and warranted to be good and of merchantable quality. (*Id.*). The umbrellas and "their component parts were defective as to design, manufacture, and warnings, causing the umbrellas and their component parts to be in a dangerous and defective condition that made them unsafe for their intended use." (*Id.* at 6). The umbrellas were not, at the time of sale and warranty, of good and merchantable quality. (*Id.*). Unknown to Plaintiff, "one of the umbrellas was in fact of bad quality at the time of sale, unfit for use, breaking when used causing [P]laintiff to suffer damages in a sum in excess of $200,000.00." (*Id.*).

Plaintiff sought general damages for pain and suffering in the amount of $100,000.00, medical and related expenses in the sum of $34,390.77, actual damages for loss of income in the sum of $150,000.00, costs, prejudgment interest, and attorneys' fees. (*Id.*).

## II. Summary Judgment Evidence

Plaintiff's response to the Hyatt's special interrogatories, set one, stated the following. (Special Interrogatories (#64-1) at 2). Plaintiff was the President and 55% shareholder of Contempo Floor Coverings, Inc. ("Contempo") located in Los Angeles, California. (*Id.* at 3). Contempo was engaged in the business of retail and wholesale flooring and window coverings. (*Id.*). Plaintiff alleged lost earnings in the amount of $38,000.00. (*Id.* at 5). Plaintiff stated that he was responsible for generating most of the sales at Contempo and that Contempo employed commission sales personnel who were responsible for dealing with his clients and referrals while he was unavailable because of the injuries he had sustained. (*Id.*). Plaintiff did not contend that he would lose income in the future as a result of the incident. (*Id.*).

Plaintiff's amended responses to the Hyatt's special interrogatories, set one, stated the following. (Am. Special Interrogatories (#64-2) at 2). Plaintiff's yearly income depended on many factors including sales, profit, employee commissions and availability of funds. (*Id.*). Plaintiff's annual income was based on payment of his monthly salary ($21,000) plus bonuses in that 12-month period. (*Id.*). Profit varied based on total sales and expenses including the payment of commissions to the sale staff. (*Id.* at 2-3). Plaintiff clarified that his loss of earnings in the amount of $38,000 was based on the fact that he was not able to work full-time due to his injuries. (*Id.* at 3). He calculated his loss

> by adding 2009 July to Dec. figure for [his] sales, $825,489.98, to [his] 2011 July-Dec sales of $939,331.77 = $1,764,821.75. [He] divided this number by 2 creating an average of $882,410.87. Subtracting $668,921.66 from the $882,410.87 = $213,489.87. Contempo realizes a 32-33% profit on sales and [he] multiplied $213,489.87 x 32.5% (.325) = $69,384. [He] then multiplied $69,384 x .55 = $38,161. Additionally, [he] missed a yearly opportunity to travel to China for a trade show but [could not] predict lost opportunities from this missed trip.

(*Id.*). Plaintiff provided a chart with his earnings and sales for past years. (Haloossim Chart (#64-2) at 7). Plaintiff's W-2 was for $346,200 in 2009, $387,049 in 2010, and $352,581 in 2011. (*Id.*). Plaintiff's sales from July to December was $825,489.98 in 2009, $668,921.66 in 2010, and $939,331.77 in 2011. (*Id.*).

In his deposition, Plaintiff testified to the following. (Haloossim Depo. (#64-3) at 2).

3

Plaintiff was a 55% shareholder in the business and his brother owned the remaining interest. (*Id.* at 10). Plaintiff received a salary of $21,000 per month from the corporation and received that salary during July 2010 through December 2010. (*Id.* at 31). After tax returns were completed at the end of each year, Plaintiff and his brother made tax decisions. (*Id.*). Specifically, if it was "best to distribute that extra benefit or added compensation to the officers" they did. (*Id.*). However, there were years that they did not "for whatever reason–personal or corporate reason." (*Id.*). That was how Plaintiff got his added compensation which he stated was "subjective." (*Id.*). The main factor that went into the decision each year was "corporate versus individual in terms of . . . benefits of what would be the best way to distribute . . . whatever money [was] left." (*Id.*). Plaintiff agreed that, in any given year, he could decide not to distribute some of the added compensation because he could need it for the corporation the following year depending on planning. (*Id.* at 31-32). Plaintiff was in charge of buying, managing, promoting, selling, and importing at Contempo. (*Id.* at 32).

Upon being asked how Contempo determined that it realizes a 32-33% profit on sales, Plaintiff responded, "Well basically when we figure our gross sales . . . versus the cost of material and labor and . . . you deduct that shows that . . . about 30 or 32 percent of or 33–it depends, you know, depending on the product but between 32 to 33 percent, 35 percent of the gross is our gross profit." (*Id.* at 34-35). The 32-33% was gross profit not net profit. (*Id.* at 35). Plaintiff asserted that he was claiming himself as an individual in terms of lost earnings and had calculated how much sales he had done before and after the incident. (*Id.* at 35-36). He explained that this number had nothing to do with his staff because it involved his sales not Contempo's sales. (*Id.*). He explained that if he had bought an umbrella from a company for $5 and sold it for $10, he would deduct 10 from 5 and have 50% profit. (*Id.* at 35). Plaintiff stated that his W-2 form had "nothing to do with what [he was] claiming here in terms of loss of earning." (*Id.* at 47).

**LEGAL STANDARD**

In reviewing a motion for summary judgment, the court construes the evidence in the

4

1  light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.
2  1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows
3  that there is no genuine dispute as to any material fact and the movant is entitled to judgment
4  as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome
5  of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106
6  S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such
7  that a reasonable jury could return a verdict for the nonmoving party. *Id.*

8  The moving party bears the initial burden of identifying the portions of the pleadings and
9  evidence that the party believes to demonstrate the absence of any genuine issue of material
10 fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265
11 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the
12 assertion by "citing to particular parts of materials in the record, including depositions,
13 documents, electronically stored information, affidavits or declarations, stipulations (including
14 those made for purposes of the motion only), admissions, interrogatory answers, or other
15 materials" or "showing that the materials cited do not establish the absence or presence of a
16 genuine dispute, or that an adverse party cannot produce admissible evidence to support the
17 fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the
18 motion, the burden shifts to the nonmoving party to come forward with specific facts showing
19 that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475
20 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a
21 scintilla of evidence in support of the plaintiff's position will be insufficient; there must be
22 evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252,
23 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by
24 relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d
25 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier
26 of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475
27 U.S. at 587, 106 S.Ct. at 1356.
28 ///

**DISCUSSION**

On November 26, 2012, Frankford filed a motion for summary judgment on Plaintiff's claims for loss of income. (Mot. for Summ. J. (#63)). The next day Frankford filed an errata to the motion for summary judgment stating that its original motion for summary judgment inadvertently left the exhibit numbers off in the footnotes. (Errata to Mot. for Summ. J. (#64) at 1). The Court will cite to the errata.

On December 20, 2012, Hyatt filed a motion to join in Frankford's motion for summary judgment. (Mot. for Joinder (#69)). The Court grants Hyatt's motion to join in Frankford's motion for summary judgment.

In the motion for summary judgment, Frankford asserts that Plaintiff originally claimed $150,000 in loss income but now claims loss of income in the sum of $38,000 in his interrogatory responses. (Errata to Mot. for Summ. J. (#64) at 3). Frankford argues that Plaintiff, as an individual, did not sustain any loss of income in the year he was injured or the proceeding eight to nine months following the incident. (*Id.* at 5). Frankford asserts that, Plaintiff received his monthly salary of $21,000 even after the July 2010 accident. (*Id.*). Frankford argues that according to the chart Plaintiff provided, Plaintiff's personal income from Contempo in 2010 was $387,049.00 and decreased to $352,581.00 in 2011 when Plaintiff came back to work. (*Id.*). Frankford asserts that Plaintiff did not receive a decrease in his salary or his total compensation in 2010 when the accident occurred. (*Id.*). Frankford argues that the additional compensation that Plaintiff received as an officer after tax returns were completed was subjective and did not occur every year. (*Id.*). Frankford asserts that the additional compensation was subjective and depended on many different elements that were not the result of the July 4, 2010 incident. (*Id.*). Frankford asserts that without an actual loss of income there exists no basis to award damages for lost income. (*Id.*). Frankford argues that Plaintiff's evidence of lost income is speculative and asserts that Plaintiff cannot articulate with any degree of certainty or clarity how he determined that Contempo realizes a 32-33% profit on sales. (*Id.* at 7). Frankford asserts that Plaintiff stated that the amount lost was based on the loss of the corporation because Plaintiff was not able to service the corporation

as well as he would have otherwise had. (*Id.*).

In response, Plaintiff asserts that the parties agree to the nature of the evidence but disagree as to whether it meets the threshold for establishing his claim. (Opp'n to Mot. for Summ. J. (#72) at 2). Plaintiff argues that he had testified that his added compensation was diminished because (a) he could not attend to his regular clientele and, as a result, these transactions had to be delegated to other sales personnel that Contempo had to pay commission to, and (b) he was not available to generate sales regardless if the latter part of 2010 was a good or bad year. (*Id.* at 2-3).

In reply, Frankford argues that Plaintiff cannot articulate how he came up with the 32-33% mark-up and, thus, his figures are speculative. (Reply to Mot. for Summ. J. (#73) at 3). Frankford also argues that, even if Plaintiff could explain that percentage, Plaintiff's testimony is that the company received the loss and not Plaintiff. (*Id.* ). Frankford contends that the argument that there was a reduction to the amount payable to shareholders fails because the potential end of the year payout was subjective, not always paid, and the evidence showed an increase in sales from July to December 2010 when Plaintiff was away from work. (*Id.* at 4).

In Nevada, the "rule against the recovery of uncertain damages generally is directed against uncertainty as to the existence or cause of damage rather than as to measure or extent." *Brown v. Lindsay*, 228 P.2d 262, 266 (Nev. 1951). The rule barring recovery is not applicable if a court perceives no uncertainty as to the existence of lost profits. *Gen. Elec. Supply Co. v. Mt. Wheeler Power, Inc.*, 587 P.2d 1312, 1313 (Nev. 1978). "The existence and extent of lost profits . . . become[s] issues of evidentiary weight instead of admissibility." *Houston Exploration Inc. v. Meredith*, 728 P.2d 437, 439 (Nev. 1986).

In this case, the Court denies Defendants' motion for summary judgment on Plaintiff's claim for lost income. The Court finds that there is no uncertainty that lost income or profits could have resulted from Plaintiff's injuries during July 2010 and December 2010 when he was unable to work full time for Contempo. The Court finds that the dispute between the parties is the measure or extent of the lost profits and not to the existence or cause of the alleged lost

profits.

The Court also finds that a rational trier of fact could find for Plaintiff. It is true that Plaintiff's W-2 form from Contempo demonstrates that he made more money in 2010 when he was injured and could not work full time than he did working full time in 2011. However, these numbers are based on Contempo's success as a whole and not solely on Plaintiff's capacity as an employee. A closer look at Plaintiff's figures demonstrate that in 2009 his personal sales were $1,757,491.39 for the company, in 2010 they were $1,475,941.61, and in 2011 they were 1,706,607.20. (*See* Haloossim Chart (#64-2) at 7). A breakdown of those numbers demonstrates that Plaintiff's sales in 2009 from July to December were $825,489.98, in 2010 they were $668,921.66, and in 2011 they were $939,331.77. (*See id.*). As such, a rational trier of fact could find that Plaintiff's July 4, 2010 injuries impacted his sales productivity from July 2010 through December 2010 resulting in lost income/profits as an individual sales person. Therefore, the Court finds that there is a genuine issue of material fact as to the extent of Plaintiff's lost profits and that the matter should proceed to a jury. Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's claims for loss of income (#63).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant S. Frankford & Sons, Inc.'s Motion for Summary Judgment on Plaintiff's Claims for Loss of Income (#63) is DENIED.

IT IS FURTHER ORDERED that the Hyatt Corporation's Motion to Join Defendant S. Frankford & Sons, Inc.'s Motion for Summary Judgment on Plaintiff's Claims for Loss of Income (#69) is GRANTED as to the joinder. However, the motion for summary judgment on Plaintiff's claims for loss income (#63) is DENIED for the reasons stated above.

DATED: This 14th day of March, 2013.

_____
United States District Judge